UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| | |
|---|---|
| *LONG TIMERS GROUP, INC., et al.,* ) | |
| ) | |
| *Plaintiffs* ) | |
| ) | |
| *v.* ) | *Civil No. 08-305-P-H* |
| ) | |
| *MARTIN MAGNUSSON, et al.,* ) | |
| ) | |
| *Defendants* ) | |


RECOMMENDED DECISION ON MOTION
FOR CLASS CERTIFICATION

In this action challenging the constitutionality of a statewide prisoner mail policy adopted

by the Maine Department of Corrections ("MDOC") in 2003, *see* Class Action Complaint for

Declaratory and Injunctive Relief ("Complaint") (Docket No. 1), plaintiffs Long Timers Group,

Inc. ("LTG"), Nadim Haque, and Tyson Andrews move for certification of a plaintiff class of the

adult inmate population of all MDOC facilities, *see* Motion for Class Action Certification

("Motion") (Docket No. 2) at 2; Complaint ¶ 16.[1]

---

[1] At the outset of the Motion, the plaintiffs define the class as "all persons who, from August 4, 2003 forward were, or are, members of the adult inmate population in any facility that is part of the Maine Department of Corrections and, as such, are subject to Prisoner Mail Policy 21.2 (as revised June 21, 2004)[.]" Motion at 2. While this wording might suggest that the plaintiffs seek to include persons no longer housed in MDOC facilities, I construe it to encompass only current MDOC adult inmates for the following reasons. First, if construed otherwise, the quoted passage would be internally inconsistent: persons who were, but no longer are, MDOC prison inmates presumably would not continue to be subject to the prisoner mail policy. Second, the plaintiffs' other descriptions of the proposed class make clear that they intend to include only adult inmates currently housed in MDOC facilities. *See, e.g.*, Motion at 3, 9-10; Complaint ¶ 16. Third, because the plaintiffs seek only declaratory and injunctive relief, *see* Complaint at 13-14, persons no longer housed in MDOC facilities and therefore no longer subject to MDOC policies have no discernible stake in this action. Assuming *dubitante* that the plaintiffs did intend the proposed class to encompass persons no longer housed in MDOC facilities, I recommend that the court exercise its discretion to define the class in the manner that I have proposed. *See Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir. 1985) ("Class certification, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court.").

Although the defendants do not oppose the Motion, *see* Response to Motion for Class Certification (Docket No. 9), a court must assess the merits even of an unopposed motion for class certification, *see, e.g., Boos v. AT & T, Inc*., 252 F.R.D. 319, 321 (W.D. Tex. 2008) ("Plaintiffs' Motion for Class Certification is unopposed.  Nevertheless, pursuant to Federal Rule of Civil Procedure 23(c)(1)(A), the court must determine by order whether to certify the action as class action.") (citation and internal punctuation omitted).   For the reasons that follow, I recommend that the Motion be granted.

## I. Applicable Legal Standard

Federal Rule of Civil Procedure 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a). In addition, a class must satisfy one of three tests set forth in Rule 23(b).  *See* Fed. R. Civ. P. 23(b).   The plaintiffs assert that they satisfy the second and third of the Rule 23(b) tests. Pursuant to the second test, class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class a whole[.]"  Fed. R. Civ. P. 23(b)(2).   Pursuant to the third, class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Class certification is a matter committed to the discretion of the district court.  *See, e.g., Dionne*, 757 F.2d at 1355.  However, the court must undertake a "rigorous analysis" to assure that the requirements of the rule are met.  *See, e.g., General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Smilow v. Southwestern Bell Mobile Sys., Inc*., 323 F.3d 32, 38 (1st Cir. 2003).  "The

party seeking class certification bears the burden of establishing that class certification is appropriate." *Coffin v. Bowater Inc.*, 228 F.R.D. 397, 401 (D. Me. 2005).

## II. Factual Background

Allegations of the complaint that inform the analysis as to whether to grant class certification are as follows.[2]

Plaintiff LTG is a Maine corporation with its principal place of business at the Maine State Prison ("MSP"), 807 Cushing Road, Warren, Maine.  Complaint ¶ 2.  LTG, a non-profit organization dedicated to advocating for the rights of inmates in the MSP system, has approximately 50 members, some of whom reside at the MSP and some of whom reside at the Bolduc Correctional Facility ("BCF"), 516 Cushing Road, Warren, Maine.  *Id*.  Plaintiff Nadim Haque is an inmate at the MSP.  *Id*. ¶ 3.  He is an Indian citizen and a practicing member of the Muslim faith.  *Id*.  Plaintiff Tyson Andrews is an inmate at the MSP.  *Id*. ¶ 4.

Defendant Martin Magnusson is the commissioner of the MDOC, in which capacity he is responsible, *inter alia*, for promulgation and implementation of rules, regulations, and policies involving prisoner communications, including the receipt of mail.  *Id*. ¶ 5.  Defendant Jeffrey Merrill is the warden of the MSP, in which capacity he is responsible, *inter alia*, for the implementation of rules, regulations, and policies involving prisoner communications, including the receipt of mail.  *Id*. ¶ 6.  Defendant Albert Barlow is the deputy warden of the MSP, in which capacity he is responsible, *inter alia*, for all actions of the BCF, including implementation of

---

[2] In some circumstances, it may be appropriate to go beyond the allegations of a complaint to assess whether class certification should be granted.  *See Tardiff v. Knox County*, 365 F.3d 1, 4-5 (1st Cir. 2004) ("It is sometimes taken for granted that the complaint's allegations are necessarily controlling; but class action machinery is expensive and in our view a court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another.") (footnote omitted); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, No. MDL 1532, 2006 WL 623591, at *2 (D. Me. Mar. 10, 2006) ("I am entitled to look beyond the pleadings in order to make an informed certification decision.") (citation and internal quotation marks omitted).  Here, there are no disputes as to the premises for a class action.  *See* Response to Motion for Class Certification (Docket No. 9).  Hence, it is unnecessary to probe beyond the allegations of the complaint.

rules, regulations, and policies involving prisoner communications, including the receipt of mail. *Id*. ¶ 7.  Defendant Robert Costigan is the grievance review officer and prison administrative coordinator at the MSP and the BCF, in which capacity he is responsible, directly or through persons acting under his authority, for first level review of all inmate grievances.  *Id*. ¶ 8. Defendant Raymond Felt is the grievance review officer at the BCF, in which capacity he is responsible, directly or through persons acting under his authority, for first level review of all inmate grievances.  *Id*. ¶ 9.  Defendants John Does 1-10 and Jane Does 1-10, in their capacities as mail room clerks and supervisors, media review officers, and property officers at the MSP and the BCF, are initially responsible for implementation of Prisoner Mail Policy 21.2.  *Id*. ¶ 10.

On August 4, 2003, Magnusson approved, adopted, and implemented Prisoner Mail Policy 21.2 (as revised June 21, 2004) ("Mail Policy"), which states, in part: "Each facility shall maintain practices to inspect, read, and restrict prisoner mail as necessary to prevent the introduction of contraband, ensure the safety of prisoners, staff, and others, ensure security, maintain orderly management of the facility, enforce facility rules, and prevent criminal activity."  *Id*. ¶ 25.  The Mail Policy, adopted pursuant to 34-A M.R.S.A. § 1403, is applicable to all MDOC adult facilities, including the MSP and the BCF.  *Id*.[3]

The Mail Policy provides that, subject to exceptions contained therein, "a prisoner shall be allowed to send mail to and receive mail from anyone the prisoner wishes[.]"  *Id*. ¶ 26.  The Mail Policy provides that "[o]nly the Chief Administrative Officer, or designee, may read correspondence sent to or received by a prisoner[,]" and only "when there is a reasonable suspicion that the correspondence contains information related to criminal activity, violation of the facilities rules, or a risk to the safety of persons, security, or orderly management of the

---

[3] According to the plaintiffs, the MDOC facilities include, in addition to the MSP and the BCF, the Maine Correctional Facility, the Downeast Correctional Facility, and the Charleston Correctional Facility.  *See* Motion at 3.

4

facility." *Id.* ¶¶ 27-28.  Nowhere in the policy is the word "designee" defined, nor has the MDOC identified the "designee" or list of "designees" to the plaintiffs.  *Id.* ¶ 28.  The term "reasonable suspicion" is used throughout the Mail Policy as a triggering event that allows for the withholding, retention, and/or destruction of incoming and outgoing inmate mail.  *Id.* ¶ 27. Nowhere in the policy is the phrase "reasonable suspicion" defined or explained.  *Id.*

The Mail Policy provides that "[i]f contraband is found in incoming mail that has no substantial monetary value (e.g., contraband greeting cards, writing materials, stickers, food items, paper clips, etc.), mail or other designated staff shall immediately dispose of the item(s)." *Id.* ¶ 29.  Nowhere in the policy is the phrase "substantial monetary value" defined.  *Id.* Moreover, the policy fails to define incoming mail that may have a personal or inherent value to the plaintiffs but no substantial monetary value.  *Id.*

The Mail Policy provides that "[a]ll incoming general mail, except for postcards, must have a verifiable name and a verifiable return address" and that "[a]ny incoming general mail without a verifiable return address (with or without a name) may be opened or may be immediately disposed of without being opened."  *Id.* ¶ 30.  Nowhere in the policy are the phrases "verifiable name" or "verifiable return address" defined or explained.  *Id.*; *see also id.* ¶ 34.

The Mail Policy provides that "mail or other designated staff shall open and inspect all incoming general correspondence envelopes to check for checks, money orders, or contraband." *Id.* ¶ 31.  Nowhere in the policy is the word "contraband" defined or explained.  *Id.*

The Mail Policy provides that "[o]nly magazines, newspapers or books sent from publishers or commercial distributors may be received by prisoners."  *Id.* ¶ 33.  This prohibits the plaintiffs from receiving magazines, newspapers, and/or books from individuals or organizations

5

who publish on the Internet.  *Id*.  Moreover, the policy prohibits the plaintiffs from receiving magazines, newspapers, and/or books from non-profit organizations.  *Id*.

The plaintiffs are all inmates within the MDOC.  *Id*. ¶ 19.  As of August 25, 2008, there were approximately 2,219 adult male and female inmates in all MDOC facilities.  *Id*. ¶ 20.  All adult inmates within the MDOC are subject to the provisions of the Mail Policy.  *Id*. ¶ 21.  Since the implementation of that policy, the plaintiffs have routinely had their mail improperly withheld, confiscated, and/or destroyed by employees of the MSP and the BCF.  *Id*. ¶ 35.  In those instances in which the plaintiffs were afforded notice that their mail had been destroyed, they were given no notice and opportunity to be heard prior to its destruction.  *Id*.

Among items of mail that have been withheld, confiscated, and/or destroyed are religious books and calendars, informational guides, prepaid magazine subscriptions, articles from newspapers and magazines, computer-generated information, photocopied information, material of a "mature content," and photographs from family members or friends.  *Id*. ¶ 37.  For example, the following have been withheld and/or confiscated from Haque: Islamic calendars, catalogues on books of Islam, photocopies of pages from a book on commentaries on the Holy Qur'an, newspaper clippings, articles from magazines and computer-generated printouts of newspaper and magazine articles of general interest; an issue of *Prison Legal News*, newsletters from the Coalition for Prisoners' Rights, and newsletters and cards from Maine Books to Prisoners.  *Id*. ¶ 38.  In each case, Haque exhausted his administrative remedies.  *Id*.

As another example, LTG member and MSP inmate Christopher Carr has tried three times without success to receive his copy of the *Expedition Guide*, a publication that he was entitled to receive as a benefit of his membership in EarthWatch Institute, a national environmental organization.  *Id*. ¶ 39.  Carr attempted to exhaust his administrative remedies but,

on four occasions, MDOC employees refused to sign his grievance, a condition precedent to bringing an administrative grievance to the MDOC. *Id.* Upon information and belief, most, if not all, other LTG members have had incoming mail of one type or another withheld, confiscated, or destroyed by the defendants or persons working under their direction and control. *Id.* ¶ 40.

In February 2008, Andrews was advised that a letter from his four-year-old daughter that had been "taped" was not allowed. *Id.* ¶ 41. When Andrews inquired about the letter at the MSP Mail Room, he was advised that it had been returned because it appeared to be from a child, looked like scribbles, and was covered in tape. *Id.* He was told that, according to policy, the letter should have been disposed of, but it was returned to the sender instead. *Id.* Andrews exhausted his administrative remedies with respect to the letter. *Id.*

Related to the Mail Policy is the MDOC's Prisoner Allowable Property Policy 10.1 ("Allowable Property Policy"), relating to materials such as magazines, compact discs ("CDs"), and video games that may contain "mature" content, defined as "content suitable for persons ages 17 and older." *Id.* ¶ 42. Upon information and belief, the MDOC uses rating systems created by the music and video game industries to prohibit music CDs and video games containing a higher rating than "Teen," or "T." *Id.*

In denying the plaintiffs' administrative grievances, the defendants or their employees have consistently maintained that they do not have the resources to inspect every piece of mail that comes into either the MSP or the BCF to determine whether it meets the provisions of the Mail Policy or the Allowable Property Policy. *Id.* ¶ 43.

The plaintiffs claim that the defendants' promulgation and implementation of the Mail Policy transgresses their First and Fourteenth amendment rights and Haque's rights pursuant to

the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq*. ("RLUIPA"). *Id.* ¶¶ 14, 45-47. They further allege that the Mail Policy denies them due process of law by failing to provide for notice and an opportunity to be heard before property is destroyed, *id.* ¶ 48, and denies them equal protection under the law by prohibiting them from receiving mail when the prohibition serves no legitimate penalogical purpose, *id.* ¶ 49. They seek a declaratory judgment that the defendants are violating their civil rights under 42 U.S.C. § 1983 and Haque's rights under 42 U.S.C. § 2000cc *et seq*. by promulgating, implementing, and authorizing the Mail Policy and the Allowable Property Policy, as well as preliminary and permanent injunctions against violation of those rights by the promulgation, implementation, and authorization of those policies. *Id.* at 13-14.

### III. Discussion

### A.  Requirements of Rule 23(a)

As a threshold matter, I conclude, and recommend that the court find, that the proposed class meets the four prerequisites of Rule 23(a):

1.    Numerosity, *i.e.*, that "the class is so numerous that joinder of all members is impracticable[,]" Fed. R. Civ. P. 23(a)(1). The proposed class numbers approximately 2,000. "In general, a class of more than forty individuals satisfies the presumption that joinder is impractical and class treatment is appropriate." *Coffin*, 228 F.R.D. at 402.

2.    Commonality, *i.e.*, that "there are questions of law or fact common to the class[,]" Fed. R. Civ. P. 23(a)(2). "Complete identity of legal claims and factual circumstances is not required." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003); *see also, e.g., New Motor Vehicles*, 2006 WL 623591, at *2 n.20 ("Nothing in the

language of the Rule suggests that every question need be common for this requirement to be satisfied.") (emphasis in original).

The proposed class is in a substantially identical factual situation. All are subject to the Mail Policy and the Allowable Property Policy, and all are subject to the withholding, opening, return, and/or destruction of incoming mail. Further, to the plaintiffs' knowledge, in all instances in which mail has been destroyed, it has been destroyed without prior notice or opportunity to be heard. Finally, at least at the MSP and the BCF, the defendants maintain that they do not have the resources to inspect every piece of mail that comes into those facilities to determine whether it meets the provisions of the two policies in question.

As the examples set forth in the complaint illustrate, there are factual differences among inmates as to the nature and volume of mail affected. Yet those differences are variations on the common theme of the allegedly unlawful opening, withholding, return, and destruction of inmate mail. The divergent fact patterns hence do not undermine a showing of commonality. *See Risinger v. Concannon*, 201 F.R.D. 16, 19 (D. Me. 2001) ("Varying fact patterns may underlie individual claims as long as a common pattern of unlawful conduct by the defendant is directed at class members.") (citation and internal punctuation omitted); *Rancourt v. Concannon*, 207 F.R.D. 14, 16 (D. Me. 2002) ("While there is variation in the specifics of their individual medical circumstances, Plaintiffs do not allege that they have suffered isolated difficulties, but rather, that they face systemic barriers to receiving services.").

The plaintiffs also raise questions of law common to all proposed class members, namely, whether the promulgation and implementation of the Mail Policy transgresses their First and Fourteenth amendment rights, whether the Mail Policy violates their due process rights by failing to provide for notice and an opportunity to be heard before property is destroyed, and whether

9

the Mail Policy denies them equal protection under the law by prohibiting them from receiving mail when the prohibition serves no legitimate penological purpose.  *See* Complaint ¶¶ 45-46, 48-49.

There is one exception.  The plaintiffs claim, in addition, that the complained-of mail practices and policies transgress Haque's rights pursuant to the RLUIPA, a statutory scheme "designed to preclude a State or local government from imposing a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government can show that the burden furthers a compelling governmental interest and does so by the least restrictive means."  *Id*. ¶ 14; *see also id*. ¶¶ 43, 47.  Nonetheless, the RLUIPA claim targets the same conduct on the part of the defendants as the common claims: the opening, withholding, return, and destruction of mail.  Further, the plaintiffs seek the same, or nearly identical, relief for the alleged RLUIPA violation as for the common claims: a declaration that the promulgation, implementation, and authorization of the Mail Policy and the Allowable Property Policy violates their rights, and preliminary and permanent injunctions against violation of those rights.  *See id*. at 13-14.  The existence of the RLUIPA claim hence does not foreclose a finding of commonality.

3.    Typicality, *i.e*., that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  "This requirement is satisfied if the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members."  *Compact Disc*, 216 F.R.D. at 204-05 (citation and internal quotation marks omitted).  "The focus in the typicality inquiry is on whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *New Motor*

*Vehicles*, 2006 WL 623591, at *3 (citation and internal punctuation omitted).  As noted above, the representative plaintiffs' claims arise from the same mail policies and manner of handling inmate mail as those of the proposed class.  The representative plaintiffs press several claims common to all proposed class members, plus a RLUIPA claim that targets the same conduct on the part of the defendants as the common claims and would be redressed by similar, if not identical, injunctive relief.  This suffices to satisfy the typicality requirement.

4.      <u>Adequacy of representation</u>, *i.e.*, that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This inquiry focuses on both the adequacy of the named plaintiffs and the adequacy of class counsel."  *Compact Disc*, 216 F.R.D. at 205.  "It is satisfied if: (i) the interests of the representative parties do not conflict with the interests of any class members; and (ii) the plaintiffs' counsel is qualified, experienced, and able to prosecute the action on behalf of the class vigorously."  *Id*.  Here, as in *Compact Disc*, "the named plaintiffs' injuries are the same as those of the class members[,]" and "[t]here has been no indication of any conflicts among class members."  *Id*.  The named plaintiffs accordingly are adequate representatives of the interests of the class.  Further, the quality of the class counsel's pleadings and briefs, and his diligence in investigating and prosecuting this matter, demonstrate an ability to protect the interests of the class competently and adequately.

### B.  Requirements of Rule 23(b)

The plaintiffs seek certification of a class under Rule 23(b)(2) and Rule 23(b)(3).  *See* Motion at 2.  I conclude, and recommend that the court find, that the proposed class should be certified pursuant to Rule 23(b)(2).

"A Rule 23(b)(2) class ordinarily is used when broad, class-wide injunctive or declaratory relief is appropriate."  *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418,

427 (1st Cir. 2007).  "Paradigmatic Rule 23(b)(2) cases involve various actions in the civil-rights field, but the subdivision is not limited to such cases."  *New Motor Vehicles*, 2006 WL 623591, at *5 (citation and internal punctuation omitted).  "[W]hile the lack of identifiability [of class members] is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)."  *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004).  "In fact, many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population."  *Id.*; *see also, e.g., Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("[N]otice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited.").

Two requirements must be met for certification pursuant to Rule 23(b)(2): that "the party opposing the class has acted or refused to act on grounds generally applicable to the class[,]" and that, accordingly, final injunctive relief is appropriate "with respect to the class as a whole."  *New Motor Vehicles*, 2006 WL 623591, at *6-*7 (citations and internal quotation marks omitted).  "The First Circuit has characterized [the first] prong of the 23(b)(2) test as essential to class certification, for the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, and a 23(b)(2) class is defined by the actions which a defendant has taken toward the class, and which should arguably be enjoined."  *Id.* at *6 (citation and internal quotation marks omitted).  "Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  *Id.* (citation and internal punctuation omitted).

The plaintiffs' case comfortably fits the paradigmatic mold of the first prong of the Rule 23(b)(2) test.  All proposed class members are subject to and governed by the mail policies in issue, and all face the prospect, if not yet the experience, of the opening, withholding, return, and destruction of their mail.  In essence, the plaintiffs claim violations of their civil rights as a result of actions that the defendants have taken toward the class as a whole that arguably should be enjoined.  *See* Complaint at 13-14.

The second and final prong of the Rule 23(b)(2) test "requires a court to examine the appropriateness of injunctive relief with respect to the class as a whole."  *New Motor Vehicles*, 2006 WL 623591, at *7.  Here, as in *Risinger*, the plaintiffs seek no money damages but rather "a permanent injunction against Defendants' [allegedly unlawful] general policies, practices, and procedures[.]"  *Risinger*, 201 F.R.D. at 23.  The same, or nearly identical, injunctive relief is sought on behalf of all prospective class members with respect to the same two prison policies on account of the MDOC's alleged systemic unlawful opening, withholding, returning, and destruction of mail.  *See* Complaint at 13-14.  "Such allegations make this case an appropriate candidate for Rule 23(b)(2) class certification."  *Risinger*, 201 F.R.D. at 23; *see also, e.g.*, *Rancourt*, 207 F.R.D. at 16 (certifying class pursuant to Rule 23(b)(2) when "[p]laintiffs seek declaratory and injunctive relief for the class as a whole to remedy the Defendants' practice of placing eligible individuals on a waiting list for services").

For the foregoing reasons, I recommend that the court certify the proposed class pursuant to Rule 23(b)(2).  This obviates the need to consider the certifiability of the class pursuant to Rule 23(b)(3).  *See, e.g., Risinger*, 201 F.R.D. at 23 (finding certification pursuant to Rule 23(b)(2) appropriate in case in which plaintiffs sought permanent injunction against defendants' general policies, practices, and procedures; noting that plaintiffs did not seek money damages

13

and, hence, the court did not need to consider whether money damages predominated or whether Rule 23(b)(3) requirements had been met).[4]

### IV.  Conclusion

For the foregoing reasons, I recommend that the Motion be **GRANTED** and that the court **CERTIFY** a class pursuant to Federal Rule of Civil Procedure 23(b)(2) consisting of the adult inmate population of all MDOC facilities.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral*

---

[4]  I considered whether it was advisable to create a subclass of prisoners, such as Haque, who allege that the Mail Policy infringes their rights pursuant to the RLUIPA.  *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1790, at 587 (3d ed. 2005) ("Wright, Miller & Kane") (court may act on its own initiative in determining whether to create subclasses).  I perceive no need to create a subclass.  While Haque alleges that the Mail Policy infringes a separate statutory right, all class members (i) allege that they are subject to and governed by the mail policies at issue, (ii) face the prospect, if not yet the experience, of the opening, withholding, return, and destruction of their mail, and (iii) seek a declaratory judgment that the mail policies are unlawful, as well as an injunction against violation of their rights by the promulgation, implementation, and authorization of those policies.  Haque's interests accordingly do not clash with those of fellow class members. *See In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, Civ. No. 04-5184 (FSH), 2007 WL 542227, at *17 (D.N.J. Feb. 16, 2007) ("A class need not be divided into subclasses merely because different groups have alternative legal theories for recovery, or because those groups have different factual bases for relief."); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp.2d 277, 283 (S.D.N.Y. 2002) (fact that securities litigation targeted two different disclosures and sought relief pursuant to two different statutes, the Securities Act and the Exchange Act, did not mandate creation of subclasses when the plaintiffs' claims arose out of a common core of facts and legal issues, dealt with overlapping or intertwined defendants, and attacked various aspects of a uniform course of conduct involving the dissemination of allegedly false and misleading disclosures about company); *Gaskin v. Pennsylvania*, No. Civ. A. 94-4048, 1995 WL 355346, at *5 (E.D. Pa. June 12, 1995) ("The usual situation in which a court will divide a class into subclasses under Rule 23(c)(4)(B) [predecessor to Rule 23(c)(5)], is when the class is found to have members whose interests are divergent or antagonistic.").  Although creation of a subclass does not at this time appear to be necessary, the court "retains the flexibility to certify subclasses as the case progresses and as the nature of the proof to be developed at trial becomes clear." *Deutsche Telekom*, 229 F. Supp.2d at 283 (citation and internal quotation marks omitted); *see also, e.g.*, 7AA Wright, Miller & Kane § 1790, at 588 (subclasses may be created at any time during the litigation).

*argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*


Dated this 4th day of March, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
